**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

BRANDON ROBINSON,

        Plaintiff,

v.                                                                          ACTION NO.
                                                                            2:04cv672

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3) seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") ending his entitlement to a period of disability and disability insurance benefits under Title II of the Social Security Act, effective April 30, 2002.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends that the final decision of the Commissioner be affirmed.


## I. PROCEDURAL BACKGROUND

On January 20, 1994, Brandon Robinson ("Mr. Robinson") filed an application for disability insurance benefits with the Department of Health and Human Services of the Social Security

Administration. (R. 33-35).[1]  He alleged an onset of disability as of October 4, 1993, due to a broken left leg, swelling in the left foot, the inability to walk without an assistive device and the residual effects of chest surgery on his vocal cords. (R. 33-35, 40).  He also complained of shortness of breath on exertion, frequent bouts of chest pain, numbness and restricted movement in the left foot, and that he became easily irritated, anxious and frustrated in crowded situations. (R. 492-95).  On April 26, 1994, he filed an application for Supplemental Security Income payments under Title XVI of the Act. (R. 40).

The application for disability insurance benefits was denied at the initial level and both applications (the application for Supplemental Security Income was escalated to the reconsideration level) were denied at the reconsideration level. (R. 40).  Mr. Robinson requested a hearing and in an on-the-record favorable hearing decision dated December 21, 1995, an Administrative Law Judge (ALJ) found that Mr. Robinson had been disabled since October 4, 1993. (R. 36-46).  The ALJ also determined that medical improvement was possible, therefore a continuing disability review would be necessary.  Mr. Robinson's resulting Title II benefit amount was such that he was ineligible for Supplemental Security Income payments.

In October 2001, Mr. Robinson's case was reviewed to consider his work activity and his medical status. (R. 68-75).  He had returned to work in October of 2000, working fifteen hours a week as a janitor/cleaner. (R. 17).  Mr. Robinson's record showed he was last seen by an orthopedic specialist in January 2001, at which time it was determined that he had been doing well, but was experiencing some left thigh pain and lower extremity pain. (R. 17).  Disability Determination Services was unable to obtain additional medical records for Mr. Robinson.  In addition, Mr.

---

[1]     "R." refers to the administrative record.

Robinson did not return phone calls or respond to a letter sent on February 12, 2002, requesting him to attend a special examination. (R. 17).  Mr. Robinson was notified on March 2, 2002, that, due to his failure to cooperate with the disability review, he was no longer disabled as of February 2002. (R. 98-99).  Consequently, his last benefit check would be for April 2002.

Mr. Robinson requested reconsideration, benefit continuation and a hearing before a Disability Hearing Officer (DHO). (R. 61).  Following the hearing and review of additional medical evidence, the DHO issued a decision on October 15, 2002, finding there had been medical improvement in Mr. Robinson's condition since the comparison point decision (December 21, 1995), that the medical improvement was related to his ability to work, and that Mr. Robinson was no longer disabled. (R. 53-58).  Using Rule 202.20 of the Medical-Vocational Guidelines (Grids) as a framework for decision-making, the DHO found Mr. Robinson capable of performing "simple, routine work at the light and sedentary level." (R. 57).

Mr. Robinson's disability cessation and termination of benefits were upheld on reconsideration. (R. 51-60).  Mr. Robinson requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration which was held on June 24, 2003.  (R. 488-96).  He was represented by Charlene Brown, Esq. at the hearing.  (R. 488).

On August 14, 2003, the ALJ issued a decision finding that since February 28, 2002, Mr. Robinson had the residual functional capacity[2] to perform the exertional and non-exertional requirements of unskilled sedentary work with certain limitations. (R. 10-25).

---

[2]       Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.

The Appeals Council of the Office of Hearings and Appeals of the Social Security Administration denied review of the ALJ's decision on September 23, 2004, thereby making the ALJ's decision the "final decision" of the Commissioner subject to judicial review pursuant to 42 U.S.C. § 405(g). (R. 3-5).

Mr. Robinson brought this action seeking review of the decision of the Commissioner ending his entitlement to a period of disability and disability insurance benefits effective April 30, 2002. He filed a complaint on November 4, 2004, which the defendant answered on January 13, 2005. Mr. Robinson filed a Motion for Summary Judgment with Memorandum in Support ("Plaintiff's Memorandum") on March 14, 2005. Defendant filed a Motion for Summary Judgment with supporting memorandum on April 13, 2005. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II. FACTUAL BACKGROUND

Mr. Robinson was a forty-nine year old man at the time of the hearing in this matter. (R. 490). Born April 25, 1954, he is presently fifty-one years old. (R. 490). He has a ninth grade education and his past relevant work experience[3] includes twenty years working as a linesman/welder at the shipyard, working as a supply specialist in the Virginia National Guard, and part-time work as a janitor/cleaner. (R. 18).

---

[3]     Past relevant work experience is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 416.965(a) (2004); 20 C.F.R. § 404.1565(a) (2004).

### A. **Medical Evidence in the Record**

On October 4, 1993, Mr. Robinson was involved in a motorcycle accident. (R. 104). His injuries included abdominal trauma with fracture of the spleen, chest trauma with tear of the thoracic aorta, pulmonary contusion, left hemothorax, small subdural hematoma, contusion of the left kidney, left femur fracture and left lower extremity nerve plexus injury. He was hospitalized for 10 weeks. Id.

In April 1994, Mr. Robinson's treating physician, H.W. Trieshmann, Jr., M.D., completed a Medical Report for General Relief and offered the opinion that, due to his left femur fracture, Mr. Robinson would be restricted in employment until 1995 or 1996. (R. 232).

In October 1994, Dr. Trieshmann completed a physical capacities evaluation of Mr. Robinson stating that he could perform sitting work for seven to eight hours daily if he could sit or stand at will, but that he was unable to lift five pounds and would need to elevate his legs for 30 minutes every four hours. (R. 262-64). This opinion and the supporting medical evidence formed the basis for Mr. Robinson's December 21, 1995, fully favorable ALJ decision. (R. 40-46).

In June 1994, Mr. Robinson began outpatient rehabilitation at the Riverside Rehabilitation Institute. (R. 244-47). He reported that he was independent in all self care except getting in and out of the bathtub. Pertinent physical examination findings revealed +1 muscle stretch reflexes at the knees, +2 at the right ankle (could not be obtained at the left ankle), and decreased sensation at the lateral aspect and sole of the left foot. Calf circumference was 35 cm on the right and 32 cm on the left and thigh circumference was 41 cm on the right and 40cm on the left. Manual muscle strength revealed good strength throughout except at the left lower extremity. His ankle-foot orthotic

("AFO")[4] appeared to be fitting well and he also used a quad cane. Repeat electrodiagnostic testing and a TENS (transcutaneous electrical nerve stimulation) unit for his left hip pain were recommended. The electromyogram revealed complete conduction block of the left peroneal and posterior tibial nerves. (R. 248).

Mr. Robinson reported that in 2000, he had been diagnosed HIV positive and was prescribed anti-viral medications, Viracept, Epivir, and Zerit. (R. 268). He lost 10 pounds in one year attributed to skipping meals. (R. 292). His CD4 counts[5] ranged between 450 in September 2001, and 741 in January 2002, and he had no reported signs of opportunistic or systemic infections. (R. 296, 300).

In January 2001, Dr. Trieshmann reported that Mr. Robinson's left femur fracture had completely healed but that a cyst had formed. (R. 256). He was prescribed Celebrex for pain, but no additional treatment was reported.

In February 2001, Mr. Robinson had a chest x-ray showing a right lung mass. (R. 288). All studies were negative for malignancy or infection. Id. CT followup studies showed the mass was stable and a recommendation against surgery was offered. (R. 285). In May 2001, Mr. Robinson underwent a pulmonary evaluation as part of an asbestos lawsuit. (R. 268-77, 328). His work history involved close proximity to asbestos. He complained of shortness of breath and difficulty breathing after walking three blocks on a flat surface or up one flight of stairs and an occasional cough. (R.

---

[4]      An AFO is "a brace (usually plastic) worn on the lower leg and foot to support the ankle, hold the foot and ankle in the correct position, and correct foot drop." The On-Line Medical Dictionary, *available at* http://www.cancerweb.ncl.ac.uk/omd/.

[5]      "CD4 counts" are the number of helper lymphocytes in a cubic millimeter of blood. With HIV, the absolute CD4 count declines as the infection progresses. The absolute CD4 count is frequently used to monitor the extent of immune suppression in persons with HIV. The On-Line Medical Dictionary, *available at* http://www.cancerweb.ncl.ac.uk/omd/.

269).  Pulmonary function tests demonstrated a moderate restrictive lung defect and mild obstructive lung defect with moderately reduced gas exchange, consistent with pulmonary asbestosis. (R. 269).

In June 2002, at the request of the Virginia Department of Rehabilitative Services, Mr. Robinson underwent a consultative medical evaluation by Sidney Tiesenga, M.D. (R. 315-16).  Mr. Robinson related his medical history, that he occasionally saw his orthopedic surgeon, and that, due to a nerve injury to his left foot, he wore an AFO to prevent stubbing his toe.  He also took blood pressure medications and anti-viral medication for HIV.  X-rays showed a healed left fracture in satisfactory position and alignment.  After testing Mr. Robinson's range of motion, the examining physician concluded that "[Mr. Robinson's] fractured femur [is] really no problem to this individual at the present time . . . . This individual certainly could handle a sedentary occupation." (R. 316).

In May 2003, a physician from the Chesapeake Health Department completed a residual functional capacity evaluation of Mr. Robinson. (R. 343-46).  He noted that Mr. Robinson visited every three months for 30-45 minutes and complained of fatigue and low energy, and he displayed some lack of affect possibly due to depression. (R. 343).  The doctor checked that Mr. Robinson's symptoms "occasionally" would interfere with attention and concentration but that he was capable of a low-stress job. (R. 344).  The doctor also noted that while Mr. Robinson was able to ambulate, he may need a sedentary job due to his left leg injury.  Mr. Robinson was able to sit and stand more than two hours at a time and could sit, stand and walk at least six hours in an eight-hour work day.  He also opined that Mr. Robinson would need a job that permitted shifting positions at will but with prolonged sitting, Mr. Robinson would not need to elevate his legs. (R. 345).  He could frequently lift and carry 10 pounds.  Id.  The doctor concluded that Mr. Robinson's fatigue would not interfere with his ability to work without interruptions in concentration, or prevent him from focusing on

7

tasks, but that there would be days when he would be unable to work due to fatigue. (R. 346).   Mr.

Robinson was not taking any prescription medications for pain.   Id.

## B.   Testimony in the Record

At the DHO hearing on September 16, 2002, Mr. Robinson testified that his condition was

the same as it was on December 21, 1995,  the comparison point decision. (R. 53).   He reported that

he was limited to walking and was unable to run.   His left knee was very sensitive and his leg

became fatigued with walking.   He took his brace off when the leg started aching.   He used aspirin

for pain.   He spent his day watching television and talking on the telephone.   He was able to do his

laundry, put out the trash, vacuum, wash dishes, dust, cut the grass with a self-propelled mower,

drive and shop.   He stated that he could walk and stand for one hour, and he could lift 30 pounds.

He was unable to reach very far.   He could climb steps one at a time but could not go down them

well.   He did not do any stooping, crouching or crawling.   Kneeling was limited to five to ten

minutes.   He also reported that he attended church and visited with family. (R. 79).

At his administrative hearing held on June 24, 2003, Mr. Robinson reported that in the

morning he watches the news, and lays in bed for two to three hours before getting the energy to get

up. (R. 492).   He stated he experienced hip and leg pain of about seven or eight on a scale of ten, and

that this caused fatigue "just shutting the body down". (R. 493).   He testified he fatigued easily, his

energy level was quite low, and that his pain was constant and frequent. (R. 492-93). He stated that

two or three times each day, he elevated his feet for one hour, and he alternated sitting and standing.

(R. 493-94).   He spent most days at home but sometimes shopped for groceries. (R. 494-95).   His

brother brings in the groceries sometimes, as well as helping with housework and mowing the grass.

(R. 495).   He testified that he was unable to work due to stress and fatigue. (R. 495).

### III. ANALYSIS

The ALJ held that, as of April 30, 2002, Mr. Robinson was no longer under a disability within the meaning of the Social Security Act. The Court's review of this decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g) (1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401.

Under Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), a denial of benefits is not supported by substantial evidence if the ALJ "has not analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." The issue before this Court, therefore, is not whether Mr. Robinson is disabled, but whether the Commissioner's finding that Mr. Robinson is not disabled is supported by substantial evidence and was reached based upon a correct

application of the relevant law.  See id.

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

> inability to do any substantial gainful activity[6] by reason of any medically determinable physical or mental impairment[7] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2004); see also 42 U.S.C. § 423(d)(1)(A) (1998).  To meet this definition, the claimant must have a "severe impairment"[8] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.  20 C.F.R. § 404.1505(a) (2004); see also 42 U.S.C. § 423(d)(2)(A) (1998).

Factors to be considered in deciding whether an individual's disability continues are provided in 20 C.F.R. § 404.1594.  Except in specified situations, an individual's disability will be found to have ceased only if there has been medical improvement in the individual's impairment(s) (other

---

[6]     "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties and (2) is done (or intended) for pay or profit.  20 C.F.R. § 404.1510; § 416.910 (2004). Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572 (2004).

[7]     "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

[8]      The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c) (2004).

than medical improvement which is not related to the individual's ability to work) or one of the exceptions to medical improvement applies, and the individual is currently able to engage in substantial gainful activity (SGA).   20 C.F.R. § 404.1594(a). The regulations define medical improvement as any decrease in the medical severity of the impairment(s) which was present at the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled (referred to herein as the "comparison point decision").   20 C..F.R. § 404.1594(b)(1). A determination that there has been a decrease in medical severity must be based on changes (improvement) in symptoms, signs, and/or laboratory findings manifested by the impairment, and this medical improvement must be related to the ability to work. 20 C.F.R. § 404.1594(b)(2).  If there has been medical improvement and an increase in the individual's functional capacity to do basic work activities, then it will be determined that medical improvement related to the ability to do work has occurred.   20 C.F.R. § 404.1594(b)(3).

The regulations provide a sequential evaluation process to follow in reviewing the question of whether disability continues.   20 C.F.R. § 404.1594(f).

1.      Is the individual engaging in substantial gainful activity?

2.      If not, does the individual have an impairment which meets or equals the severity of an impairment listed in Appendix 1?

3.      If not, has there been medical improvement as shown by a decrease in medical severity?

4.      If there has been medical improvement, is the improvement related to the individual's ability to do work?

5.      If there has been no medical improvement, or the medical improvement is not related to the individual's ability to do work, do any exceptions to the medical standard

apply?[9]

6.      Does the evidence show that the individual's current impairments are severe, i.e., significantly limit the individual's ability to do basic work activities?

7.      If the impairment is severe, does the individual's residual functional capacity based on the individual's current impairments, allow the individual to do past relevant work?

8.      If the individual is unable to do past relevant work, given the individual's residual functional capacity, age, education, and past work history, can the individual do any other work?

The ALJ used this sequential evaluation to determine that Mr. Robinson was no longer disabled. First, the ALJ determined that Mr. Robinson had not engaged in substantial gainful activity since October 1993. (R. 19)  The ALJ also found that Mr. Robinson had severe impairments due to the residuals of his left femur fracture, including some pain and peroneal nerve palsy. (R. 21).

Next, the ALJ performed a comparison of the medical evidence regarding Mr. Robinson's

---

[9]      The exceptions include:

1.      The individual has benefitted from advances in medical or vocational therapy or technology (related to his or her ability to work).
2.      The individual has undergone vocational therapy (related to his or her ability to work).
3.      Based on new or improved diagnostic or evaluative techniques, the individual's impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision.
4.      Any prior disability decision was in error.   20 C.F.R. § 404.1594(d).
5.      The individual is currently engaged in SGA.  20 C.F. R. § 404.1594(d).

The regulations also provide that the review may end and that the individual's disability will be found to have ended at any point if one of the other "exceptions" is established:

1.      A prior determination was fraudulently obtained.
2.      The individual does not cooperate.
3.      The individual cannot be found.
4.      The individual fails to follow prescribed treatment which would be expected to restore his or her ability to engage in SGA.  20 C.F.R. § 404.1594(e).

condition on December 21, 1995 (comparison point decision), to the medical evidence available on June 24, 2003 (the date of the ALJ's decision). (R. 19-20).  On December 21, 1995, Mr. Robinson had a left femur comminuted, displaced fracture, status post open reduction and internal fixation, and left lower extremity nerve plexus injury. (R. 41).  As a result of these injuries, he lacked the residual functional capacity to lift and carry any amount of weight, stand or walk, sit without elevating his leg for thirty minutes every four hours, perform tasks requiring operation of foot controls with his left leg and foot, climb, crawl, crouch, and kneel. (R. 45; 262-64).

A review of the medical evidence available since December 21, 1995, reveals the following. X-rays taken in January 2001 show complete healing of his left femur fracture (R. 256), and a whole body bone scan in 2001 was negative. (R. 255).  Mr. Robinson continued to suffer peroneal nerve palsy due to the fracture, and continued to use an AFO; however, he no longer required a cane to walk. (R. 256, 345). A cyst had formed in the area of the fracture, and Mr. Robinson was prescribed Celebrex for pain in January 2001, but required no further treatment for his fracture. (R. 256).

Mr. Robinson was found to be HIV positive in 1999, but showed no signs of opportunistic infections or secondary disease process. (R. 268).  He was being treated with Viracept, Epivir, and Zerit.  His CD4 counts, which had been monitored since November 1999, had fluctuated between 336 and 741, with the most recent count prior to the ALJ's decision being 580 in April 2003. (R. 296, 300).  Although Mr. Robinson had experienced some weight loss, the record indicates this was due to his eating only two meals a day and exercising regularly. (R. 292).  The ALJ found Mr. Robinson's HIV+ to be relatively asymptomatic.

Following physical chest examinations, chest x-rays and pulmonary function studies, Mr. Robinson was diagnosed with pulmonary asbestosis in May 2001. (R. 285-88).  He complained of

13

an occasional cough that produced sputum, and shortness of breath on exertion, after walking three blocks on a flat surface, or one flight of stairs. He denied wheezing, and a bronchial washing of the right upper lobe was negative for malignancy. In May 2001, December 2001, and January 2002, Mr. Robinson was feeling well without evidence of dyspnea, fever or cough, and his lungs were clear on physical examination. (R. 268-77, 285) A chest CT was stable. (R. 328).

Based on the above, the ALJ correctly found "there has been a lessening in the severity of the signs, symptoms, or laboratory findings related to the physical impairments that were present at the time of the comparison point decision;" therefore, there had been medical improvement. (R. 20).

At the comparison point decision, Mr. Robinson was unable to perform the full range of sedentary work. (R. 40-46). On September 16, 2002, Mr. Robinson testified before the DHO that he was able to stand and walk one hour and lift 30 pounds (Tr. 53). He stated that he could climb stairs one step at a time but had difficulty descending stairs. He stated that he was unable to stoop, crouch or crawl and kneeling was limited to five to ten minutes. Id. At his hearing, he testified that he elevated his leg two to three times a day for an hour each time to ease the leg and hip pain and must alternate sitting and standing (Tr. 493-94). However, his primary care physician reported that plaintiff was no longer required to elevate his leg while sitting and that he could sit or stand/walk for six hours each in an eight-hour workday (Tr. 345). Consequently, the ALJ found that Mr. Robinson's medical improvement was related to his ability to work. (R. 21).

The ALJ found that Mr. Robinson's severe impairments, due to the residuals of his left femur fracture, including some pain and peroneal nerve palsy, significantly affected his ability to perform heavy lifting and carrying or prolonged standing and/or walking. (R. 21). However, the ALJ properly found these impairments did not, even in combination, meet or equal any of the impairments listed

14

in Appendix 1, Subpart P, Regulations No. 4 (or 20 C.F.R., Part 404, Subpart P, Appendix 1 (2004)). (R. 20).  These include sections 1.06 (fracture of the femur), 3.02 (chronic pulmonary insufficiency), 11.08 (spinal cord and nerve root lesions) and 14.08 (human immunodeficiency virus).  For example, his leg fracture had healed, he was able to walk and move about effectively with a AFO brace, his pulmonary function tests showed only mild abnormalities, there was no evidence of opportunistic disease or systematic manifestations of his HIV infection or functional limitations imposed by the HIV infection as required in section 14.08A-N of the listings.

Based on the ALJ's evaluation of the evidence, the ALJ determined Mr. Robinson's residual functional capacity.  The ALJ found that Mr. Robinson retained the residual functional capacity to perform the exertional demands of "at least" sedentary work with the following restrictions: no climbing ladders, ropes or scaffolds, no kneeling, crouching, or crawling, only occasionally climbing stairs, balancing, or stooping, and avoiding unprotected heights and hazardous moving machinery. (R. 22).  The ALJ found that due to the heavy lifting and prolonged walking and standing involved in Mr. Robinson's past relevant work as a linesman/welder and in view of his reduced residual functional capacity, he was unable to return to this work.

Next, the ALJ considered that Mr. Robinson was a "younger individual age 45-49" with at least a ninth grade education. (R. 23).  If Mr. Robinson were capable of performing a full range of sedentary work, a finding of "not disabled" would be reached applying the Medical-Vocational Guidelines Rules (Grids) 201.18, 201.19, 201.21.  However, strict application of the Grids was inappropriate since Mr. Robinson had non-exertional postural limitations and hazard restrictions, which narrowed, but not significantly, the range of work Mr. Robinson was capable of performing. In such cases, when the plaintiff cannot perform all of the exertional demands of work at a given level

of exertion and/or has any non-exertional limitations, the Grids are used as a framework for decision making.

The ALJ correctly concluded that considering Mr. Robinson's age, education, work experience and residual functional capacity, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  For example, as found by the DHO, Mr. Robinson was capable of performing such unskilled sedentary jobs as addresser and nut sorter. These jobs require no climbing, balancing, stooping, kneeling, crouching, or crawling or any heights or moving machinery parts.  The DHO had cited County Business patterns 1991, by the U.S. Department of Commerce, as indicating sufficient industries that would be expected to employ individuals in those fields of work. (R. 57).  Accordingly, the ALJ correctly reached a finding of "not disabled." (R. 23-25).

Mr. Robinson admits the consultative physician opined he is capable of handling a sedentary job.  Plaintiff's Memorandum p. 4.  However, Mr. Robinson argues he is not capable of working a forty-hour week due to the pain he experiences in his left hip and leg.  Plaintiff's Memorandum pp. 6-7.

The existence of pain can constitute a disability if the pain is of such a debilitating degree that it prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. § 404.1505(a) (2004); see also 42 U.S.C. § 423(d)(1)(A) (1998).  The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological  abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b);

§ 404.1529(b); 42 § 423(d)(5)(A) (1998)).  If there is such evidence, then the ALJ must evaluate "the

intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to

work."  Id. at 595 (citing 20 C.F.R. § 416.929(c)(1) and § 404.1529(c)(1) (2004)).

When evaluating the intensity and persistence of the claimant's pain, and the extent to which

it affects his ability to work, the ALJ must take into account not only the claimant's statements about

the pain, but also

> all the available evidence, including the claimant's medical history,
> medical signs, and laboratory findings; any objective medical evidence
> of pain (such as evidence of reduced joint motion, muscle spasm,
> deteriorating tissues, redness, etc.); and any other evidence relevant to
> the severity of the impairment, such as evidence of the claimant's daily
> activities, specific descriptions of the pain, and any medical treatment
> taken to alleviate it.

Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(2), (c)(3) and 404.1529(c)(2), (c)(3) (2004)).

The ALJ considered Mr. Robinson's statements about his fatigue and pain. (R. 22).  This

included Mr. Robinson's comments at the September 2002 DHO hearing that he spent his day

watching television and talking on the telephone, and that he was able to do his laundry, put out the

trash, vacuum, wash dishes, dust, cut the grass with a self-propelled mower, drive and shop. The ALJ

also considered Mr. Robinson's testimony at the June 2003 hearing that he lays in bed for two to three

hours in the morning before getting the energy to get up; he experienced hip and leg pain of about

seven or eight on a scale of ten, and that this caused fatigue "just shutting the body down;" he fatigued

easily, his energy level was quite low, and that his pain was constant and frequent; two or three times

each day, he elevated his feet for one hour; he spent most days at home but sometimes shopped for

groceries; and, his brother brings in the groceries sometimes, as well as helping with housework and

mowing the grass.  The ALJ concluded:

> [t]he claimant's statements concerning his impairments and their
> impact on his ability to do work are not entirely credible in light of the
> above-discussed medical evidence of record; the modest objective
> findings on physical examinations; the moderate degree of ongoing
> treatment required; the lack of strong pain medication; and the
> inconsistencies in the claimant's statements regarding his daily
> activities as related to the DHO in September 2002, and those made
> during the hearing in June 2003.

(R. 22).  The Regulations make clear that a claimant's own subjective statements of his symptoms

"are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a)

(2004).

In addition to Mr. Robinson's complaints of pain, the ALJ properly considered the medical

evidence.  All medical opinions in the record indicate Mr. Robinson is capable of performing

sedentary work.  In January 2001, Dr. Trieshmann reported Mr. Robinson's left femur fracture had

completely healed. (R. 256). He prescribed Mr. Robinson Celebrex for pain, potentially from a cyst

which had formed in the fracture area, but reported no additional treatment of Mr. Robinson.  In June

2002, Dr. Sidney Tiesenga examined Mr. Robinson at the request of the Virginia Department of

Rehabilitative Services. (R. 315-16).  Dr. Tiesenga found Mr. Robinson's fractured femur was not

a problem, and that Mr. Robinson could perform a sedentary occupation. (R. 316).  In May 2003, a

physician from the Chesapeake Health Department noted that Mr. Robinson visited every three

months, that he was able to sit and stand more than two hours at a time, could sit, stand and walk at

least six hours in an eight-hour day, and that he was capable of a low-stress job. (R. 343-46).

The ALJ correctly noted that the residual functional capacity he determined Mr. Robinson

possessed was more limiting than examining medical sources as well as the opinion of plaintiff's

treating physician. (R. 22).  Finally, the ALJ found significant that even though plaintiff's part-time

light exertion work as a custodian which he performed from October 2000 until sometime in 2003 did not rise to the level of substantial gainful activity, the work clearly was indicative of Mr. Robinson's ability to perform sedentary work. (R. 22).

There is significant evidence in the record to support the ALJ's finding and the Commissioner's decision that since February 28, 2002, Mr. Robinson has not been disabled.


## IV.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED.


## V.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court

based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto,

737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


_____/s/_____
                                    Tommy E. Miller
                                    United States Magistrate Judge


Norfolk, Virginia

August 4, 2005

## <u>CLERK'S MAILING CERTIFICATE</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A. Brown, Esq.
Montagna Klein Camden LLP
425 Monticello Ave.
Norfolk, VA 23510


Virginia L. Van Valkenburg, Esq.
Office of the United States Attorney
101 West Main Street
Suite 8000
Norfolk, VA  23510



Elizabeth H. Paret, Clerk


By _____
Deputy Clerk

August            , 2005